UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:20 CR 559 SRC |
| v. | ) | |
| | ) | |
| WILLIAM JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant, WILLIAM JACKSON, represented by defense, counsel Bobby E. Bailey, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the indictment, the government agrees that no further federal prosecution will be brought in this District relative to the events underlying the indictment, of which the Government is aware at this time.

In addition, the parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties agrees to

1

recommend a sentence of three hundred months (300) in the Federal Bureau of Prisons followed by lifetime supervised release at the time of sentencing. The parties further agree to request that such sentence of three hundred (300) months be run concurrent to any sentence imposed in 20JE-CR02830 and 3:20-CR-30058. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

The defendant also agrees, pursuant to the guilty plea to Counts I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to an Apple iPhone 11. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 3. ELEMENTS:

As to Count One, the defendant admits to knowingly violating Title 18, United States Code, Section 2251(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Production of Child Pornography which he admits to knowingly committing and for which he admits there is a factual basis are: (1) defendant knowingly used a minor to engage in sexually explicit conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) said visual depiction was produced using materials that have been transported in interstate or foreign commerce.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In November of 2019, in the Eastern District of Missouri, the defendant, acting with co-defendant Melissa Jackson, sexually abused a minor whose initials are J.B. when J.B. was six (6)

2

years old.  J.B, is the niece of the co-defendant, being the daughter of the co-defendant's

biological sister. The defendant and co-defendant, acting together, produced and transmitted via

the internet to the defendant at least ten images of the sexual abuse of J.B. utilizing digital

recording equipment on an Apple iPhone cellular telephone that contained material that was

mailed, shipped or transported in or affecting interstate or foreign commerce. Defendant, acting

with the co-defendant, produced images of the sexual abuse of J.B., including multiple instances

of sexual contact with J.B. by the defendant, during which time J.B.  The defendant, acting with

the co-defendant, produced images depicting J.B. lying on a bed on her stomach, while the

defendant is standing over her with his naked penis in his hand; images in which the defendant is

touching J.B. on her buttocks with his penis on top of her underwear; and images depicting J.B.

lying on a bed while the defendant is placing his penis on J.B.'s face.

        The defendant and co-defendant communicated via text messages on their cellular

telephones regarding their sexual abuse of J.B. and the production of child pornography

involving J.B.  The following are texts message exchanges between the defendant and co-

defendant that occurred on or about November 8, 2019 (use of the minor's name has been

replaced with J.B.)

Defendant William Jackson:
to bad i couldnt come lay in bed with you and J.B. when she falls asleep

Co-defendant Melissa Jackson:
Well....... you could baby but you have [male named believed to be that of a minor omitted]

Defendant William Jackson:
i could tell him gonna take a friend home from work and i would be back

Co-defendant Melissa Jackson:
If you want to babe that's up to you baby

3

Defendant William Jackson:
i really wanna be in bed with both of you

Co-defendant Melissa Jackson:
I really want you to be babe

Defendant William Jackson:
defintely still want pics of her

Co-defendant Melissa Jackson:
I will get some promise

Defendant William Jackson:
ty baby your awesome
what time does she go to bed baby

Co-defendant Melissa Jackson:
She will probably be getting tired about now when I get home I am gonna shower then have her come lay down with me and then it shouldn't be long after that hopefully lol

Co-defendant Melissa Jackson:
In her pjs ready for bed
[Sends an image of J.B.]

Defendant William Jackson:
such a cutie is she just in underwear under the pjs

Co-defendant Melissa Jackson:
Yes

Defendant William Jackson:
so hot
maybe if you were naked she would get naked till she fell asleep

Co-defendant Melissa Jackson:
Idk she always sleeps with clothes on....... I can't sleep naked I always have to have at least a shirt on

Co-defendant Melissa Jackson:
Wish you were in bed with us in the middle
Of the two of us

Defendant William Jackson:
if love to be there
when she falls asleep i will be

Co-defendant Melissa Jackson:
I could suck you while you rub on her baby

Defendant William Jackson:
was hopeing her pjs were up a bit so could see her underwear

Co-defendant Melissa Jackson:
She kept pulling them down

Defendant William Jackson:
just have to get after she falls asleep

Co-defendant Melissa Jackson:
Yes

Defendant William Jackson:
i could eat your pussy while you rub on her baby

Co-defendant Melissa Jackson:
Would be hot

Defendant William Jackson:
hopefully she falls asleep soon

Co-defendant Melissa Jackson:
I know

Defendant William Jackson:
you give her the meletonin

Co-defendant Melissa Jackson:
Yes I did

Defendant William Jackson:
you do a bigger dose

Co-defendant Melissa Jackson:
Yes

Defendant William Jackson:
i still can't believe your into this like i am ... still feels like a dream

Co-defendant Melissa Jackson:
Why baby........

Defendant William Jackson:
i have never had anyone that would have been if i had said anything
what were gonna do tonight you like alot .. the same as i do

Co-defendant Melissa Jackson:
Whatever
You want to do baby
w I like to be controlled this is no different than that

Defendant William Jackson:
thats with me and you doing things ..... but im refering to her and doing things .... do you like
that part

Co-defendant Melissa Jackson:
Yes baby I do

Defendant William Jackson:
your 100 percent positive it turns you on that your rubbing her pussy
and my cock rubbing on her

Co-defendant Melissa Jackson:
Baby your overthinking again yes I am
Finger me while your cock rubs on her

Defendant William Jackson:
ok i just had to hear it baby ... like i had mentioned no one has ever wanted to do that
stuff

Co-defendant Melissa Jackson:
Baby if I didn't like it I would tell you

Defendant William Jackson:
hows our sexy daughter doing

Co-defendant Melissa Jackson:
Good she is still
Talking lol

Defendant William Jackson:
our daughter getting tired yet

Co-defendant Melissa Jackson:
She is not talking as much lol

Defendant William Jackson:
damn baby i want you to lick her pussy

Co-defendant Melissa Jackson:
I want to ride your cock with her next to us baby

Co-defendant Melissa Jackson:
Think she is asleep
[Sends an image of J.B.]

Defendant William Jackson:
omg so sexy
cute panties too

Co-defendant Melissa Jackson:
Yes and I am naked
You jacking off yet baby

Defendant William Jackson:
get a pic between her legs baby
she in the perfect postiton you could get behind her and take a pic
then spread her panties aside showing her pussy and get another pic

Co-defendant Melissa Jackson:
Every time I move she moves lol
[Sends an image of J.B.]

Defendant William Jackson:
omg hell yes
so far your doing awesome baby
you want me to head that way

Co-defendant Melissa Jackson:
If you want to baby I hate that it is so late for you

Defendant William Jackson:
i wanna come and be there with you both
and also wanna get pics if her pussy too
have you tried again moveing her panties aside to get a pic

Codefendant Melissa Jackson:
Yes and she moves every time
Maybe I need to go stronger on melatonin

Co-defendant Melissa
No don't want to risk her waking up then saying something to my sister...... that would not end
well

Defendant William Jackson:
thats why she needs to stay asleep
well maybe she will be in a deeper sleep when i get there and can do it then .... ill see if i
can do it

Co-defendant Melissa Jackson:
Let me Know when you are on your way

Defendant William Jackson:
car warming up now
I'm headed that way now
Will it be OK if I take pics while I'm there too

Co-defendant Melissa Jackson:
If you can

Defendant William Jackson:
even if it's like the ones like you took I'll get some different angles and stuff and I want to
take some of you to

Co-defendant Melissa Jackson:
She still moves every time I move or touch her

Defendant William Jackson:
Guess just have to up the dosage and see then maybe she won't move but moving them
aside this time probably won't happen just because of that so will have to get them pics next time
Your address is [address omitted] right

Co-defendant Melissa Jackson:
Yes it is babe

Defendant William Jackson:
im here babe

Co-defendant Melissa Jackson:
Ok babe
Done on in baby
Come

Defendant William Jackson:
Oh my God baby that was so hot

Co-defendant Melissa Jackson:
Thank you for coming over baby

Co-defendant Melissa Jackson:
Yes it was baby

Co-defendant Melissa Jackson:
Thank you for doing that with me and not judging me baby

Defendant William Jackson:
Baby I will never judge you

Co-defendant Melissa Jackson:
Damn that was amazing

Defendant William Jackson:
Yes it was
She has a nice little ass to

Co-defendant Melissa Jackson:
Please don't love me any less for what we just did baby
It was hot as fuck

Defendant William Jackson:
Baby I love you more because we done that
It was hot as fuck definitely
really need to get her knocked out so we can play with her pussy and I rub my cock on her mouth

Co-defendant Melissa Jackson:
That will be so hot

Defendant William Jackson:
Definitely want to do it again

The following text message exchange occurred on or about November 22, 2019:

Defendant William Jackson:
I'm really excited about J.B. tonight

Co-defendant Melissa Jackson:
I am too babe hopefully the meds work
Then you can rub your cock on her pussy

Defendant William Jackson:
I'm hoping so too baby and Hell yes I want to do that bad
And in her mouth and on her ass
then you could take pictures of me doing it

9

Co-defendant Melissa Jackson:
Yes baby

Defendant William Jackson:
definitely need her in T-shirt and panties or nightgown in no panties
even better if you can get her to sleep told me naked
Totally it be really hot having my cock in [JB's] mouth and you holding it there where I can't take it out when I'm about to cum and make me cum in her mouth even if I try to stop you And you make me do it

Co-defendant Melissa Jackson:
Oh my God babe that would be so hot to make you come in her mouth
All right baby I will control you I'm gonna make you come in her mouth and all over her body

Defendant William Jackson:
Oh my god so fucking hot
do whatever you can to get our little sex toy knocked out

Co-defendant Melissa Jackson:
I'm gonna do my very best baby
Gonna be so fun if it all goes the way we want it to

Defendant William Jackson:
Going to be a lot of fun

Co-defendant Melissa Jackson:
I would love my very own sex slave

Defendant William Jackson:
get him young and you train and control him how you wanted
I could have an adult sex slave (you) and a little sex slave lol
yes definitely how young would you want so you could train

Co-defendant Melissa Jackson:
Would have to go pretty young babe

Defendant William Jackson:
thats totally fine babe
younger the better

Co-defendant Melissa Jackson:
How young you willing to go

Defendant William Jackson:
baby to 2 years
god i hope all goes as planned tonight with J.B.

Co-defendant Melissa Jackson:
I agree babe would have to be very young so we could train them not to say
anything
Thank you for not hating me for all this baby I want it so bad

Defendant William Jackson:
never baby

Co-defendant Melissa Jackson:
She brought a nightgown and we were talking about wearing matching nightgowns but I
Don't have a green one lol

Defendant William Jackson:
damn i cant wait
i wanna get pics of her pussy

Co-defendant Melissa Jackson:
Definitely need to get pics

Defendant William Jackson:
let me know when she starts to settle down in bed and ill get a shower
I wanna see a pic of her baby send me one

Co-defendant Melissa Jackson:
[Sends images of J.B.]

Defendant William Jackson:
damn so adorable
you should come out naked and tell J.B. she should sleep naked like that and see
what she says

Co-defendant Melissa Jackson:
Shower done she wouldn't stay in the room with me naked she went out and shut the
door lol

Defendant William Jackson:
well was worth a shot lol
you drug her yet baby

Co-defendant Melissa Jackson:
Yes I did

Defendant William Jackson:
hopefully wont be to long now

Co-defendant Melissa Jackson:
I hope not lol I'm ready to play

Defendant William Jackson:
what kind of panties she wearing

Co-defendant Melissa Jackson:
I honestly don't know she changed while I was in the shower

Defendant William Jackson:
shall find out soon

Co-defendant Melissa Jackson:
Yes we shall lol can't wait
She is in bed now......... hopefully she is sleeping soon

Defendant William Jackson:
ok babe gonna get a shower ... get pics asap

Co-defendant Melissa Jackson:
Ok I will
She is sleeping
[Send an image of J.B.]

Defendant William Jackson:
holy shit so hot ... pull the blanket down farther

Co-defendant Melissa Jackson:
[Sends an image of J.B.]

Defendant William Jackson:
god damn sexy
car is warming up now and get gas then heading that way
did she move at all when you m
moved the blanket

Co-defendant Melissa Jackson:
No not at all

Defendant William Jackson:
may be able to move her panties aside to get a pussy pic or even off when i get there ....

12

Co-defendant Melissa Jackson:
Seems that way

Defendant William Jackson:
might be able to even rub her mouth and pussy too
can you move her panties aside and get a picture
Hell she didn't budge then you might be able to if you're slow and easy to be able to take
them all the way off

Co-defendant Melissa Jackson:
No movement at all

Defendant William Jackson:
ok baby yea def dont want to wake her ..... when i get there ill see if i can get them down or
moved enough to get pics of her pussy take a pic babe

Co-defendant Melissa Jackson:
[Sends images of J.B.]

Defendant William Jackson:
Damn baby yes if you get her legs spread some get down low enough you can get a picture of her
pussy

Co-defendant Melissa Jackson:
She's moving every time I try to pull them down more

Defendant William Jackson:
I'll be there in a couple minutes

Co-defendant Melissa Jackson:
Ok babe meet you at the door

On April 29, 2020, the defendant responded to an advertisement referencing incest that

was placed on an online forum.  The advertisement had, unbeknownst to the defendant, bene

placed by an undercover law enforcement officer. The defendant communicated with the

undercover officer's fictitious persona and expressed interest in engaging in sexual activity with

the an individual that the defendant believed to be a ten-year old female minor.  The defendant

told the undercover officer's fictitious persona that the defendant engage din sexual activity with

the defendant's son and daughter when they were six and eight years of age.  The defendant

states that "they both love sucking and taking in the ass.. he likes his little cock sucked... I thought about tieing her up and me and the boy use her...she suck him while im in her ass..." On April 29, 2020, the defendant travelled to the State of Illinois from Missouri to meet who he believed would be the ten-year old female minor with the intention of engaging in sexual conduct with her. The defendant was arrested by law enforcement at that time. A review of the defendant's cellular telephone conducted subsequent to that arrest and conducted with the consent of the defendant revealed ten images of the aforementioned sexual abuse of J.B.

## 5. STATUTORY PENALTIES:

As to Count One, the defendant fully understands that the maximum possible penalty provided by law for the crime of Production of Child Pornography to which he is pleading guilty is imprisonment of not less than fifteen years and not more than thirty years, and a fine of not more than $250,000. The Court may also impose a period of supervised release of not more than life and not less than five years. **The defendant fully understands that the crime to which he is pleading guilty requires a mandatory minimum term of imprisonment of at least fifteen years.** Additionally, assessments, restitution and other costs as set forth more fully below may be ordered in addition to such imprisonment, fine and supervised release.

## 6. U. S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

## A. Chapter 2 Offense Conduct:

### 1. Chapter 2 Offense Conduct, Count One, Production of Child Pornography:

(a)     **Base Offense Level:** The parties agree that the base offense level is thirty-two (32) as found in Section 2G2.1(a).

(b)     **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

>          (i)     four (4) levels should be added pursuant to Section 2G2.1(b)(1)(A) because the offense involved a minor who had "not attained the age of twelve years;"

>          (ii)    two (2) levels should be added pursuant to Section 2G2.1(b)(2)(B) because the offense "involved the commission of sexual contact;" and

>          (iii)   two (2) levels should be added pursuant to 2G2.1(b)(3) because the "defendant knowingly engaged in distribution."

**B. Chapter 3 Adjustments:** The parties recommend the following adjustments, other than acceptance of responsibility, apply: none.

(1) **Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the

government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) Other Adjustments:  The parties agree that the following additional adjustments apply: none.

C. Estimated Total Offense Level:  The parties estimates that the Total Offense Level is thirty-seven (37).

D. Criminal History:  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

E. Effect of Parties' U.S. Sentencing Guidelines Analysis:

The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

a. Appeal:  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute to which the defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute.

**(2) Sentencing Issues:**  In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category.  Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the defendant to a term of imprisonment of at least two hundred and forty (240) months.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

### a. Disclosures Required by the United States Probation Office:

The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

### b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

### c. Supervised Release:

Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. Some of these special conditions may include that defendant not possess a computer or internet access, that defendant not have contact with minors without the authorization of the Probation Officer, that defendant participate in sexual offender counseling and that defendant not maintain a post office box. In addition, as a condition of supervised release, defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where required to do so by state or federal law. The defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United

18

States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished. If, while on supervised release for this case, the defendant commits a new criminal offense under Chapters 109A, 110 or 117, or Title 18, United States Code, Sections 1201 or 1591, for which imprisonment for a term longer than one year can be imposed, the defendant shall be sentenced on the supervised release revocation to not less than five years and up to the maximum term of life imprisonment.

   **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100 which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before October 1, 2019, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. §2251(a) (production of child pornography).

   Additionally, per 18 U.S.C. § 2259A, defendant fully understands that for offenses committed on or after December 7, 2018, the Court may impose an assessment of not more than fifty thousand dollars ($50,000.00).

   **e. Possibility of Detention:** The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:**

The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259.  The amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss.

**g. Forfeiture:**

The defendant knowingly and voluntarily waives any right, title, and interest in all contraband items and materials seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The items seized that will be returned include, but are not limited to, the following: an Apple iPhone A1984. The defendant agrees that forfeited items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-

examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. The defendant understands that defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction. Defense counsel has advised the defendant of the possible sex offender registration consequences resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

If the defendant is not a U.S. citizen, the guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring or as set forth in Paragraph 2 above.

8 . 30 . 21
Date

JILLIAN S. ANDERSON
Assistant United States Attorney

8-27-2021
Date

WILLIAM JACKSON
Defendant

8-27-2021
Date

BOBBY E. BAILEY
Attorney for the Defendant

23